J-A19011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
 : PENNSYLVANIA
 :
 v. :
 :
 :
 :
JESSE SPOERRY :
 :
 Appellant : No. 3157 EDA 2022

Appeal from the Judgment of Sentence Entered December 5, 2022
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001802-2018

BEFORE: BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:  **FILED OCTOBER 11, 2023**

Jesse Spoerry appeals from the judgment of sentence of sixteen to forty years of incarceration imposed after a jury convicted him of two counts each of aggravated assault and simple assault, as well as one count each of burglary and possession of an instrument of crime. We affirm.

This Court previously set forth the background of this matter as follows:

> On July 24, 2018, Mary Johnson ("Johnson") and Korryn Suprys ("Suprys") were sleeping on a pullout bed in Johnson's home when an intruder attacked them both with an object like a baseball bat or pipe. They went to bed around 9:30 or 10 [P.M]. Next Johnson remembers, the attacker struck her in the legs while screaming "you fucking bitches, how could you do this to me, you fucking bitches?" Suprys awoke to Johnson screaming for help and was hit around her right eye, knocking her unconscious. Her eye swelled shut. Meanwhile, Johnson jumped away, tripping on the bed, and she "flew" out the front door, hoping a neighbor would hear her scream. The attacker followed her outside and

---

[*] Retired Senior Judge assigned to the Superior Court.

continued to beat her on the head, arms, and back. [After regaining consciousness,] Suprys walked to the bathroom where she saw blood covering her face and the side of her head "crumpled together." Johnson followed a trail of blood to meet Suprys in the bathroom, saying "look what Jesse (Appellant) did to [your] ear." Johnson then helped her off the toilet and took her to lie down. [Appellant was the ex-boyfriend of Johnson.]

Responding to the scene after Johnson called 911, Detective Earl Ackerman of the Pocono Township Police Department found [Johnson] standing in the entranceway with "a lot of" blood on her head and body. Suprys was seated on the edge of the couch they used as a bed. Blood covered the couch. He found a blood trail leading to the bathroom and a significant amount of blood in the bathroom itself. Detective Ackerman observed cast-off on the walls and ceiling around the bed, consistent with a bloodied object being swung.

The victims both spent three days in the hospital. Johnson received treatment for a concussion with loss of consciousness, lacerations to the scalp, a broken collarbone, and fractures in her arm, wrist, thumb, and hand. Suprys experienced facial and skull fractures and had an epidural hematoma and concussion. At the time of trial, she continued to experience recurrent headaches and pain in her ear and shoulder.

[At trial, t]hey both identified Appellant as the assailant by his face, voice, body structure, and shoes. Johnson testified that she saw him standing by the bed holding a bat in the glow of a "bug light" on the front porch that lit him "like a glow worm." Suprys also remembered Johnson say "Jesse, what the fuck are you doing?" The message dispatching Detective Ackerman to the scene reported Johnson's ex-boyfriend[, Appellant,] as the possible assailant, indicating the 911 caller had identified him. Suprys could also recognize Appellant's voice while he screamed at them, as she knew him as [Appellant], and Johnson identified Appellant by the shoes she bought for him at a buy-one-get-one sale at The Crossings outlet stores. Suprys could only see the assailant from the waist down but believed she could recognize the build of his lower body. Another witness, Johnson's neighbor Meghan Serfass, saw Appellant's car driving toward the crime scene between 10:30 and 10:45 while she stood outside smoking a cigarette. She identified a photo of the car as the one belonging to Appellant at trial. She could recognize the car as a Honda Civic

- 2 -

with black detailing on the side and a fire extinguisher in the passenger-side window.

Pocono Township Detective James Wagner reconstructed Appellant's movements on the day of the crime, using geographical information of the cell towers accessed by Appellant's phone and the internal GPS location data recorded by the phone itself. The court qualified Detective Wagner as an expert in cell data analysis and mapping, and he testified as follows. Between 9:40 and 10:05 P.M., Appellant left his home and then moved in a southerly direction toward the crime scene. He arrived in that vicinity at or after 10:32 P.M. By 11:12 P.M., he had begun to travel away east, toward New Jersey. Johnson called 911 at 11:02. Detective Wagner testified to a reasonable degree of expert certainty that Appellant's phone was in the area of the crime at the time the assault occurred.

***Commonwealth v. Spoerry***, 268 A.3d 420, 2021 WL 5275795 at *1-2 (Pa.Super. 2021) (non-precedential decision).

During trial, Appellant sought to cross-examine Johnson about three separate incidents of "threats, sexual assault against her daughter, and other suspicious behavior which she had reported to police" prior to the instant assault to show motive and identity concerning other suspects who could be responsible for the attack. ***Id***. at *2, 5. The trial court denied the request, determining *inter alia* that they were not admissible as "reverse character" evidence pursuant to Pa.R.E. 404(b), relating to other crimes, wrongs, or acts. ***See*** Trial Court Opinion, 1/15/20, at 10-14. However, as will be discussed more below, the court allowed Appellant to call his own witness to testify concerning one of the events in question, but that witness did not appear at trial.

- 3 -

At the conclusion of trial, the jury convicted Appellant of the crimes identified hereinabove, but acquitted him of two counts each of attempted criminal homicide and terroristic threats. The trial court sentenced Appellant to an aggregate term of twenty to forty years in prison, which included a mandatory minimum sentence of incarceration pursuant to 42 Pa.C.S. § 9714 because this was Appellant's second conviction of a crime of violence.

The trial court subsequently granted Appellant leave to file a direct appeal *nunc pro tunc*. On appeal, Appellant raised numerous issues, one of which was whether the court erred in precluding Appellant from asking Johnson about the three occasions where she called police months before the assault. In reviewing that issue, we considered the Pennsylvania Supreme Court's then-recent decision in **Commonwealth v. Yale**, 249 A.3d 1001 (Pa. 2021). In **Yale**, our High Court stated that "evidence of [a] person's crimes, wrongs or other acts lies outside the contours of Rule 404(b) when introduced by a criminal defendant." **Id**. at 1021-22. Rather, "determining the admissibility of third person guilt evidence requires nothing more than the traditional inquiries prompted by our rules of evidence," which includes whether it is relevant and whether its probative value is outweighed by any danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." **Id**. at 1022 (discussing Pa.R.E. 401 and 403).

Based on the **Yale** decision, we determined that the trial court in this matter erred in denying Appellant's request to cross-examine Johnson

concerning the third-party bad act evidence since it improperly applied an analysis pursuant to Pa.R.E 404(b). *Spoerry*, *supra* at *6. We consequently remanded the matter for the court to reconsider, among other things, the admissibility of this evidence pursuant to Rules 401-403. *Id*. at *6, 16.

On remand, the trial court held a hearing, wherein Appellant introduced three police reports, one for each of the three events Appellant requested to ask Johnson about at trial. The court deferred judgment regarding admissibility of the evidence pending consideration of briefs from Appellant and the Commonwealth. Ultimately, the court entered an opinion on July 15, 2022, finding that while the testimony was admissible pursuant to the rules of evidence, and thus the court erred in excluding the same, Appellant was not entitled to a new trial because the decision constituted harmless error. Appellant was subsequently resentenced, and this timely appeal followed.

Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents a single issue for our review: "While on remand whether the [c]ourt erred when it ruled it was harmless error to prevent the Appellant from cross-examining . . . Johnson, one of the alleged victims, about various incidents of threats, sexual assault against her daughter, and other suspicious behavior which she had reported to police?" Appellant's brief at 4 (cleaned up).

We begin with the legal principles pertinent to our review. Regarding the court's decision to preclude admissible evidence, this Court has stated that, "[u]nder the harmless error doctrine, we must vacate the order on review

- 5 -

to correct the error unless we are convinced beyond a reasonable doubt that the error is harmless." ***Commonwealth v. Murray***, 248 A.3d 557, 576 (Pa.Super. 2021) (cleaned up). Further,

> [a]n error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless. The Commonwealth bears the burden of proving that the error was harmless beyond a reasonable doubt.
>
> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Fitzpatrick***, 255 A.3d 452, 483 (Pa. 2021) (cleaned up).

We are mindful that "when reviewing for harmless error, the appellate court considers only the uncontradicted evidence and, having done so, proceeds to determine whether that body of uncontradicted evidence was so overwhelming that the erroneous [exclusion] of the evidence could not have impacted the verdict." ***Id***. at 470. Our High Court has further elucidated that when conducting this review, we are not impeded in considering circumstantial evidence, so long as it is uncontradicted. ***See Commonwealth v. Mitchell***, 839 A.2d 202, 215 n.12 (Pa. 2003).

The harmless error doctrine "reflects the reality that the accused is entitled to a fair trial, not a perfect trial." ***Commonwealth v. Wilson***, 286

A.3d 1288, 1300 (Pa.Super. 2022) (citation omitted). It also seeks to "promote. . . public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Id*. at 1301.

With this background in mind, we now briefly review the three incidents Appellant sought to examine Johnson about at trial. The first occurred on February 7, 2018, approximately five and one-half months before the attack at issue. There, Johnson called police because a white Nissan had been parked outside of her residence for fifteen minutes, which she believed was suspicious. A reporting officer made contact with three males inside the car, who indicated that they were waiting for someone. The officer did not note any suspicious behavior and ran three clean background checks. The individuals were sent on their way without further issue. *See* N.T. Motion, 3/18/22, at 9 (Defendant's Exhibit 1).

The second event was from April 16, 2018, more than three months before the assault. Johnson's minor daughter, O.J., received a message on Facebook from a Tracy Vanwhy-Fazio. The message stated that, "Karma is coming your way for what you and your mother did to my brother you liars." O.J. was a victim and witness in a sexual assault case against John Vanwhy, the brother of Ms. Vanwhy-Fazio. The reporting officer spoke with Ms. Vanwhy-Fazio and informed her that she was not to communicate with Johnson or her daughter anymore. Ms. Vanwhy-Fazio indicated that she would stop any further communication. *See id*. (Defendant's Exhibit 2). Notably,

while the court did not permit counsel to ask Johnson about this incident at trial, it did give Appellant leave to introduce testimony of the threat through Ms. Vanwhy-Fazio, but she did not appear despite being under subpoena.

The third occurrence was on May 20, 2018, slightly more than two months before the attack. In that instance, Johnson contacted police because she came home to find both her front and back doors open and her dogs in the yard. No objects were taken from her residence. She advised law enforcement that she believed the neighboring Labar family was responsible, indicating that they had done similar things as pranks in the past. An investigating officer spoke with a minor in the Labar family, who denied entering the residence, but did indicate that as a caper, he left a carton of cigarettes on the window of Johnson's residence. *See* N.T. Motion, 3/18/22, at 9 (Defendant's Exhibit 3).

Appellant asserts that exclusion of the above evidence was not harmless. His challenge can be separated into two distinct arguments. First, Appellant contends that the court's mistake in precluding the testimony does not meet the very high bar for harmless error because by the court's own admission, the testimony of Johnson and Suprys as to identification was inconsistent. *See* Appellant's brief at 17-23. He highlights that identification of Appellant as the attacker was a contested and critical issue at trial and that the jury necessarily had to make credibility determinations as to this dispute. *Id*. at 23-24. Appellant argues that the evidence of guilt was not overwhelming when the contradicted evidence is properly excluded for the

purpose of a harmless error analysis, especially because there was a lack of blood in Appellant's car and since the objective evidence only put him in the general area, not at the exact crime scene. *Id*. at 22.

Second, Appellant maintains that the court's error was not harmless because the precluded evidence attributed motive for the attack to others. *Id*. at 24-26. He cites case law for the proposition that evidence that a third party had motive to commit the crime may raise reasonable doubt as to a defendant's guilt. *Id*. at 24-25 (citing *Commonwealth v. Ward*, 605 A.2d 796 (Pa. 1992), and *Commonwealth v. Boyle*, 368 A.2d 661 (Pa. 1977)). He posits that the incident with Ms. Vanwhy-Fazio, in particular, shows that the Vanwhy family had motive to commit the assault. *Id*. at 25. Since the jury was shielded from this evidence, the court was wrong to conclude that there was no possibility this could have contributed to the verdict. *Id*. at 25-26.

In finding that any error in disallowing inquiry as to these incidents was harmless, the trial court focused primarily on whether the uncontradicted evidence of guilt was so overwhelming, and the prejudicial effect of the error was so insignificant by comparison, that the error could not have contributed to the verdict. *See* Trial Court Opinion, 7/15/22, at unnumbered 11-12. It stated that the proposed testimony "refutes, albeit meekly, the Commonwealth's claim that the evidence admitted at trial was unequivocal that [Appellant] committed the attack." *Id*. Nonetheless, it found that the Commonwealth produced significant evidence of Appellant's guilt, including

(1) eyewitness testimony from the two victims; (2) the neighbor's testimony that Appellant's car was near Johnson's house immediately before the attack; and (3) the GPS tracking data. *Id*. at unnumbered 12. The court determined that the

> exclusion of the evidence at issue here can be reasonably ruled out as a factor in the jury's decision. The three incidents [Appellant] wishes to introduce are so disconnected from the established events of July 24, 2019 and the ensuing days that one must make a series of tenuous logical leaps to even begin to see how they could point to an alternative attacker.

*Id*.

Upon review of the certified record, we agree with the trial court that there was no "reasonable possibility that [its] error might have contributed to the conviction." *Fitzpatrick*, *supra* at 483. Initially, we note that to an extent, the testimony of Johnson and Suprys regarding identification of Appellant was contradicted based upon their prior inconsistent statements. More particularly, Officer Rath testified that while Johnson originally informed him that Appellant was the attacker shortly after he arrived on scene, she later indicated that neighbor Anthony Fennel may have been involved in the attack before she got into the ambulance. *See* N.T. Trial Vol. II, 7/17/19, at 141-42. Those statements undercut her testimony at trial that she identified Appellant during the incident and was confident he was the attacker. Moreover, Officer Rath testified that he was told by Surpys on scene that she did not hear or see the assailant during the attack, whereas at trial Surpys testified that she identified the build of Appellant's lower body and could hear

- 10 -

Appellant's voice, though she did not understand what he was saying. *Id*. at 137; *see also* N.T. Trial Vol. I, 7/16/19, at 94, 117. Therefore, we dutifully exclude the victims' disputable identification testimony from our analysis in determining whether the trial court's decision constituted harmless error. *See Fitzpatrick*, *supra* at 470.

We nevertheless find that the balance of the uncontradicted evidence, both direct and circumstantial, overwhelmingly proved that Appellant was the attacker. Cellphone data showed him driving to the area right before the assault and leaving minutes after 911 was dialed. A neighbor saw Appellant's distinctive car in the single-street plan just prior to the incident, having seen it on the street in the past, and recognized it because it included decals and a visible fire extinguisher in the passenger window. The assailant entered into the residence through an unlocked back door instead of attempting to enter through any windows, and Appellant was well aware the rear door was kept unlocked for the benefit of Johnson's daughter. Although we do not consider Suprys's testimony that she heard Appellant's voice during the attack, it was not contested that Johnson told her to "look at what [Appellant] did to [your] ear" minutes later. Further, Suprys did hear Johnson ask Appellant what he was doing right before she was struck with the object. Perhaps most critically, the 911 caller, Johnson, identified to dispatch that her "ex-boyfriend" committed the attack immediately after it was committed, which Johnson confirmed with responding officers as soon as they arrived on scene. On top of this, the Commonwealth introduced evidence that Appellant performed an

internet search on his phone a mere two and one-half hours after the attack as to active warrants in Monroe County. *See* N.T. Trial Vol. II, 7/17/19, at 175.

Additionally, even though an Anthony Fennel was named by Johnson as a potential attacker prior to being taken in the ambulance, there was undisputed testimony that Mr. Fennel had no involvement and was immediately ruled out as a suspect the same evening. Johnson stated at trial that she did not recall marking him as a suspect, but if she did, this was in error due to being given drugs for her pain by the first responders. *Id*. at 83. Thus, there was no basis in which the jury could determine that Mr. Fennel was responsible for the assault.

Taking the evidence above and weighing it against the impact of the error caused when the trial court denied Appellant's request to introduce third-party bad act evidence, we conclude that such error was harmless. The identity of Appellant as the attacker was so thoroughly established through the uncontradicted evidence that exclusion of the testimony concerning the three prior incidents that occurred long before the attack could not have affected the verdict with respect to identification. *Compare Mitchell*, *supra* at 215 (finding error from improper remark made by a prosecutor harmless when the uncontradicted evidence established the defendant was at the scene and evaded police when he understood they were looking for him in connection with a shooting), *with Commonwealth v Young*, 748 A.2d 166, 194 (Pa. 1999) (determining that erroneous admission of testimony against the

defendant was not harmless when the defendant introduced an alibi defense and nearly every significant aspect of the Commonwealth's case was contradicted).

In the same vein, we are unpersuaded that Appellant suffered harm on the basis that testimony of these three episodes would have attributed motive for the crimes to another person. Two of the incidents, those involving the individuals in the Nissan and the occasion where Johnson came home to open residence doors, do not impute motive to commit a crime to any other identifiable party, let alone a crime of extreme violence. Rather, they were merely non-criminal events entailing either unknown persons or people that have no established relationship to Johnson, Suprys, or the attack. As such, there is no reasonable possibility that had the jury heard about those two incidents, it could have contributed to its verdict.

The only matter that arguably suggested a motive to commit a crime of violence against Johnson was the Facebook threat from Ms. Vanwhy-Fazio to O.J. However, as the trial court noted, a juror would have to make exceptional and strained leaps of logic to infer that this motive implicated Ms. Vanwhy-Fazio as the attacker instead of Appellant. The threat in question was made more than three months before the attack and was a single, isolated incident. O.J. was the primary subject of the electronic message, yet the perpetrator opted to launch the attack when O.J. was not there. The threat made no mention of and was not directed to Suprys, who was targeted regardless and seriously injured in the attack. The online message was also made by a

female, when there was no testimony from any source that the assailant was female. All evidence showed that the assaulter had a male voice.

Rather, the uncontested evidence showed that Appellant had the clear motive to attack both Johnson and Suprys. Appellant and Johnson had recently broken up, and Johnson had either called or texted Appellant earlier the day of the attack, informing him that he was no longer permitted to contact her daughters, despite his close relationship with them. *See*, *e.g.*, N.T. Trial Vol. I, 7/16/19, at 179; N.T. Trial Vol. II, 7/17/19, at 57. Several hours before the assault, Appellant expressed to O.J. his disapproval about Suprys living in Johnson's residence. *See* N.T. Trial Vol. I, 7/16/19, at 179. Similarly, Johnson's daughter, E.J., testified that the same afternoon, Appellant said he would "be gone" the next day and would hide his car behind someone else's house. *Id*. at 213. Appellant had a history of threatening to report Johnson to child services. *Id*. at 59. In sum, his motive for attacking both victims was apparent, specific to Johnson and Suprys, and culminated immediately before the attack.

Further, as discussed above, Appellant was given the opportunity to call Ms. Vanwhy-Fazio as a witness to testify about the Facebook message, and thus establish this alternative motive. Ms. Vanwhy-Fazio failed to appear at trial even though she was under subpoena. Appellant cannot maintain error on part of the trial court when his own witness failed to appear.

Finally, we find distinguishable the cases cited by Appellant addressing error when a trial court excludes evidence of a third-party's motive to commit

the crime in question. **See Ward**, **supra** (finding that in an arson case, it was not harmless when the court refused to let Ward call a detective who would have testified that information provided by Ward as an informant led to numerous drug arrests the week before the fire in question, and that others were actively seeking to retaliate against Ward and could have caused the fire in dispute); **Boyle**, **supra** (determining that it was not harmless error for the court to preclude testimony that Boyle's co-defendants had a motive for the slayings that Boyle did not share, when his conviction rested solely on whether he conspired with the co-defendants to commit the killings). In those cases, the excluded motive testimony pointed to people who were either involved in the crime itself or had a motive, formed immediately prior to the incident, to commit the same crime. As already discussed, any purported motive for the Vanwhy family to attack Johnson was distant, tenuous, and in contravention to the undisputed evidence that Appellant was the attacker.

Based on the above, we are convinced beyond a reasonable doubt that any error by the trial court in excluding this evidence was harmless. Since Appellant presents no meritorious issues on appeal, we have no cause to disturb his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>October 11, 2023</u>